UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| BANKERS STANDARD | ) |
| INSURANCE COMPANY as | ) |
| subrogee of Jerry and Norma | ) |
| Ferguson, | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:13-cv-214-PPS |
| v. | ) |
| | ) |
| COPLEN CONSTRUCTION, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a subrogation action involving a fire at a home in Leesburg, Indiana. Jerry and Norma Ferguson are the owners of the home where the fire occurred and had an insurance policy with Bankers Standard Insurance Company covering the real and personal property damaged as a result of the fire. Bankers Standard brought this lawsuit seeking to be compensated for its payout to the Fergusons under the policy. It alleges that the home's roof heating system was negligently selected and installed, causing the fire that caused substantial damage to the Ferguson's home and personal property. The one remaining defendant, Terrance Heisler, doing business as Heisler Construction, filed a motion for summary judgment.[1] Because there is no evidence that

---

[1] Both parties also filed motions to strike the other side's standard of care expert under *Daubert*. [*See* DE 141 and 142.] Because my decision on the summary judgment motion would not be affected by the outcome of the *Daubert* motions, those motions will be denied as moot. I will also deny as moot Heisler's motion to strike as untimely Bankers Standard's response brief. [DE 146.]

anything Heisler or his employee did caused the fire, Heisler's motion for summary judgment will be granted.

**Factual Background**

In March of 2008, Jerry and Norma Ferguson signed a cost-plus construction contract with Coplen Construction, Inc. for construction of their new home in Leesburg, Indiana. [DE 140-3 at 2.] Larry Coplen, the primary owner of Coplen Construction and its President, asked the defendant Terry Heisler if he could lend a hand with basic framing on the Ferguson project as a subcontractor. [*Id.*; DE 140-4 at 7; DE 140-9 at 1-2.] Heisler is a carpenter by trade and formed his own company, Heisler Construction, after working for Coplen Construction for approximately twenty-two years. [DE 140-9 at 1-2.]

Coplen entered into a verbal contract with Kip Madsen of Elite Contracting to perform the electrical work on the Ferguson home. [*Id.*] As part of its responsibility under the oral subcontract, Elite Contracting was hired to install a roof heating system in the Ferguson home. [DE 140-3 at 2.] Larry Coplen spoke with Mr. Madsen of Elite Contracting about the possibility of installing some kind of heating system that could be mounted beneath the roof deck instead of on top of it. [*Id.*] Because Madsen did not have experience installing roof heating products inside a house, he called his supplier, Babsco Supply, which told him to contact Domoteck Floor Warming Systems, Inc. [DE 140-5 at 5-6.] Madsen worked with Curt Ebersole of Domoteck to select the appropriate Domoteck roof heating system for installation underneath the roof deck on the

2

Ferguson home. [*Id.* at 6; DE 140-7 at 6.] The roof heating system installed on the Ferguson home was manufactured, designed, sold, and supplied by Domoteck and the installation of the system was approved and explained by Domoteck. [DE 140-3 at 2; DE 140-5, at 8; DE 140-7 at 18.]

Madsen and his company, Elite Contracting, were solely responsible for the installation of the roof and gutter heating systems. [DE 140-5 at 35.] At some point during the construction of the Ferguson home, Madsen asked if Terry Heisler would perform labor for him installing electrical cable in the home's gutter system. [DE 140-9.] At the same time, Madsen also asked Justin Warstler to perform work for him installing the same type of cable beneath the roof. [*Id.* at 2.] Warstler had worked for Heisler on and off from 2008-2010 as Heisler needed additional help. [DE 140-11 at 2.] He began working for Heisler again in 2012 doing carpentry and labor type work. [*Id.*] But on the day he started at the Ferguson home, he answered to and worked only for Madsen. [*Id.* at 3.]

Warstler installed a good portion of the roof heating cable on the Ferguson home. [*Id.*] Madsen instructed Warstler on how to install the cable. [*Id.*] Madsen had installed a small section of the cable and explained to Warstler what he did and talked him through the installation process, leaving Warstler to complete the section that Madsen started. [*Id.*] Warstler used tools provided by Madsen. [DE 140-10 at 10, 44.] Madsen reviewed and approved Warstler's work and at no point was Warstler asked to go back and fix anything that he had done. [DE 140-11 at 6.] It took Warstler approximately

3

three months to install the heating cables under the roof, and during this time, Heisler played no role in supervising, instructing, observing, or approving Warstler's work in connection with the installation – that was all done by Madsen. [DE 140-12 at 2.]

In terms of payment, Heisler asked Madsen if Elite wanted to pay Warstler directly or if Heisler should pay Warstler. [DE 140-10 at 44-45.] Madsen told Heisler that he could bill for Warstler's work through Coplen. [*Id.*; DE 140-5 at 16.] As a result, Warstler gave Heisler his hours for his work done installing the roof heating cable, which Heisler sent to Coplen, and Coplen paid Heisler, who then paid Warstler. [DE 140-10 at 44-45.] Heisler took a markup for the work that Warstler did in installing the roof heating cables, so Warstler was not paid the full amount that Coplen was billed by Heisler. [*Id.*]

In contrast to the work done by Warstler, Heisler's work on the heating system at the Ferguson home was limited to the gutters. He installed the wiring for the heating system in the gutters as instructed by Madsen. [DE 140-5 at 35-36.] Madsen checked Heisler's work and was confident the cables were properly installed. [DE 140-5 at 36-37.]

On January 19, 2012, a fire occurred at the Ferguson home. As a result of the fire, the Fergusons allege that they sustained approximately $11,148,643.39 in damages for loss of the dwelling and $2,829,332.47 in damages for loss of personal property. [DE 140-13 at 4.] Both Bankers Standard's expert and Heisler's expert attempted to determined the cause of the fire and concluded that the most "probable" cause of the

4

fire under the National Fire Protection Association guidelines was the roof heating system and ruled out the gutter heating system. [DE 140-14 at 24-25, 56-57, 59-63; DE 140-15 at 79-82.] Both experts also agree that the fire would not have occurred if there had been GFCI protection or over-temperature protection. [DE 140-14 at 15-16, 21; DE 140-15 at 44 -46.] In addition, they both posit that the fire would not have occurred if there were not two layers of Thermo-Pan and a layer of insulation directly under the heating cable to trap in the heat. [DE 140-14 at 22; DE140-15 at 20, 48-49.] Neither of the parties claim that the gutter heating system started the fire. [DE 145 at 13; DE 150 at 5;8.]

## Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A nonmoving party like Bankers Standard is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations and quotations omitted).

Bankers Standard initially brought suit against the various parties that had a hand in constructing the Ferguson home, including Coplen Construction, Elite Contracting, Domoteck Floor Warming Systems, Inc., and Terrance Heisler (doing

5

business as Heisler Construction). After settling with the other defendants, Heisler is the lone remaining defendant. Heisler now seeks summary judgment on Bankers Standard's negligence claim, the only claim pending against Heisler. [DE 140-1; DE 70 at 15-16.] Heisler argues, among other things, that Justin Warstler was a borrowed servant of Elite Contracting and, to the extent that Warstler was negligent in his installation of the roof heating cable, Heisler may not be held responsible for his actions. [DE 140-1 at 11-15.] Heisler also argues that because he was not personally involved in the installation of the components of the roof heating system that caused the fire (recall that Heisler worked on the gutter heating system, not the roof heating system), any alleged breach of a duty of care by Heisler did not proximately cause the fire and he cannot, therefore, be held liable. [*Id.* at 18-19, 21-22.]

The borrowed servant doctrine states that "an employee while generally employed by one party, may be loaned to another in such a manner that the special employer may be responsible for the acts of the employee under the doctrine of respondeat superior." *New York Cent. R.R. Co. v. NIPSCO*, 140 Ind. App. 79, 84, 221 N.E.2d 442, 446 (Ind. Ct. App. 1966). In this case, if the borrowed servant doctrine applies, Heisler would be Warstler's general employer and Elite Contracting his special employer.

To determine which employer is liable for the acts of the employee — the special or general employer — Indiana courts have used a three-part test: (1) the "whose business" test which seeks to discern whether the tortfeasor was furthering the business

of the special or general employer at the time of the collision; (2) the "control" test which attempts to determine which employer had the right to control the specific act in question; and (3) the "scope of business" test which attempts to determine if the work being done by the servant is within the scope of the business of the special employer, and if so then the liability for the servant's acts lies with the special employer. *Progressive Const. & Eng'g Co. v. Indiana & Michigan Elec. Co.*, 533 N.E.2d 1279, 1284 (Ind. Ct. App. 1989).

There also exists a more specific seven-part test enumerated in *Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind. 1991) that has been used or recognized in a variety of employee/worker's compensation/borrowed servant cases. *Farr v. Laidig Concrete, Inc.*, 810 N.E.2d 1104, 1107 (Ind. Ct. App. 2004) (collecting cases).

Here's what the *Hale* court had to say on the issue:

> To determine if an employer-employee relationship exists which may subject an employee to the Worker's Compensation Act so as to bar his common law claim against the special employer to whom he was "loaned," the following factors have been enumerated: (1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of work boundaries.

*Hale*, 579 N.E.2d at 67. The Supreme Court of Indiana held that "the factors must be weighed against each other as part of a balancing test as opposed to a mathematical formula where the majority wins." *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001).

7

"[W]hen applying this balancing test, the trial court should give the greatest weight to the right of the employer to exercise control over the employee." *Id.*

In this case, whether I use the three-part general test or the more specific *Hale* seven-part test, the result is the same. The undisputed evidence shows that Elite had total control of Warstler for the installation of the roof heating cable. Warstler reported directly to Mr. Madsen of Elite Contracting, who asked Warstler to perform work for him installing the roof heating cable, for three months. Madsen instructed Warstler on how to install the cable, provided Warstler tools with which to install the cable, and reviewed and approved Warstler's work installing the cable. There is no evidence that Heisler played *any* role in supervising, instructing, reviewing, or approving Warstler's work in connection with the installation of the roof heating cable, or that he even possessed the information necessary to exercise direction and control with respect to these functions. Furthermore, the work done by Warstler, electrical labor installing the roof heating cable, is within the scope of Elite's business (and furthered this business) as an electrical subcontractor, and not Heisler Construction's business as a carpentry subcontractor.

It is true that Heisler billed Coplen (at the direction of Madsen) for Warstler's work and paid Warstler directly for the work he did installing the roof heating cable while taking a markup. [DE 145 at 9-10.] But this is the only aspect of Warstler's work that Heisler "controlled." The administrative process of paying Warstler was completely unrelated to Warstler's performance of his duty to install the roof heating

cable. And it is *that* work — how he laid the heating cables — that matters in this case. The fact that Heisler paid Warstler is simply too thin a reed on which to defeat Warstler's status as a borrowed servant of Elite's. *Travelers Cas. & Sur. Co. of Am. v. Adecco USA, Inc.*, No. 2:12-CV-416-TLS, 2013 WL 4776771, at *5 (N.D. Ind. Sept. 5, 2013).

Bankers Standard also raises the idea that a servant may have two masters, arguing that Heisler may still be liable for Warstler's actions while he was acting as a borrowed servant of Elite. [DE 145 at 11- 13.] But unlike the cases relied upon by Bankers Standard where a dual employment existed, Heisler had absolutely no control over the substance of the work done by Warstler for Elite. *See Halker v. United States*, No. 1:07-CV-145-JM-WGH, 2010 WL 2838468, at *5-10 (S.D. Ind. July 16, 2010) (general employer established the working conditions of the employee, had policies and procedures regarding his performance, had the sole power to discharge the employee, paid the employee, provided all of the equipment used by the employee, and the work of the employee served the mission of the general employer.); *Johnson v. Motors Dispatch, Inc.*, 172 Ind. App. 285, 292-94, 360 N.E.2d 224, 228-30 (Ind. Ct. App. 1977) (trip lease case in which the general employer leased both the vehicle and employee to the lessee.); *New York Cent. R. Co. v. N. Indiana Pub. Serv. Co.*, 140 Ind. App. 79, 91, 221 N.E.2d 442, 449 (Ind. Ct. App. 1966) (general employer had the right to hire and fire the employee, paid the employee wages, was in charge of the care and maintenance of the machine lent with the employee, was in the business of renting similar machines, and the employee was a semiskilled).

In sum, Heisler had no control, direction, or approval over the work that Warstler was performing for Elite, including Warstler's working conditions or policies and procedures by which he was made to abide. What's more, Warstler worked at the exclusive control of Madsen for three months on the project, effectively abandoning any service to Heisler. For these reasons, Justin Warstler was a borrowed servant of Elite and only Elite, his special employer, is responsible for Warstler's installation of the roof heating cable. As a result, Heisler cannot be held liable for any injury caused by any alleged negligence on the part of Warstler.

Heisler also cannot be held liable for the injuries suffered as a result of the fire at the Ferguson home because there is no evidence that he was involved in the installation of the roof heating cable. There are three elements to the tort of negligence: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach. *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458 (Ind. Ct. App. 2000). "Negligence will not be inferred; rather, specific factual evidence, or reasonable inferences that might be drawn therefrom, on each element must be designated to the trial court. However, an inference is not reasonable when it rests on no more than speculation or conjecture." *Id.* (internal citations omitted).

Summary judgment may be granted in favor of a defendant in a negligence action when the undisputed facts negate at least one element of the plaintiff's claims. *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002). Here, the third element

10

of a negligence claim, proximate cause, is fatal to Bankers Standard's case against Heisler and warrants summary judgment in Heisler's favor.[2]  "Under Indiana law, 'proximate cause' has two aspects:  (1) whether the injury would not have occurred without the defendant's negligent act or omission (also referred to as 'causation in fact'); and (2) whether the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated."  *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008) (internal quotations omitted).  "While proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts."  *Kincade*, 773 N.E.2d at 911 (confirming entry of summary judgment when none of the three defendants had any role as to the construction of what caused the plaintiff's injuries).

The evidence before me establishes that the proximate cause of the fire was the roof-heating cable and neither party claims, nor do their experts claim, that the gutter-heating cable was a potential cause.  Even if there are questions of fact regarding precisely how the roof-heating cable ignited the fire, none are material because Heisler did not have any role in the installation of the roof-heating cable.  Because Heisler was not in any way involved in the installation of what caused the fire at the Ferguson home, no question of material fact exists as to whether the Fergusons' injuries were

---

[2] Because I find that there is no evidence that Heisler proximately caused the fire, I do not reach arguments regarding Heisler's alleged duty or breach.

proximately caused by any action or inaction on part of the Heisler. For these reasons, summary judgment must be granted in favor of Heisler.

## CONCLUSION

For the aforementioned reasons the Court:

- **DENIES AS MOOT** Heisler's Motion to Strike and Exclude Testimony of Plaintiff's Expert Eugene Holland [DE 141];

- **DENIES AS MOOT** Bankers Standard's Motion to Exclude Testimony of Jeffrey Roth [DE 142];

- **DENIES AS MOOT** Heisler's Motion to Strike Untimely Brief Filed in Response to Defendant's Motion to Strike and Exclude Testimony of Plaintiff's Expert Eugene Holland [DE 146]; and

- **GRANTS** Heisler's Motion for Summary Judgment [DE 140].

Because this ruling disposes of all if the remaining issues in this case, the clerk shall **ENTER FINAL JUDGMENT** in favor of Terrance Heisler d/b/a Heisler Construction and against Bankers Standard Insurance Company as subrogee of Jerry and Norma Ferguson. The clerk shall treat this civil action as **TERMINATED**. All further settings in this action are hereby **VACATED**.

    **SO ORDERED.**

    ENTERED: March 16, 2016

                                            s/ Philip P. Simon  
                                            **PHILIP P. SIMON, CHIEF JUDGE**  
                                            **UNITED STATES DISTRICT COURT**